[Cite as *State v. Stewart*, 2024-Ohio-2150.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240255 |
| | | TRIAL NO. C-24CRB-3036 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DERRICK STEWART, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Municipal Court

Date of Entry on Appeal:  June 5, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, for Plaintiff-Appellee,

*Stephen J. Wenke*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}     Defendant-appellant Derrick Stewart was convicted of and sentenced for domestic violence, a misdemeanor of the first degree under R.C. 2919.25.  The trial court recorded its finding of guilt in one entry and its sentence in a separate entry on the same document known as a "judge's sheet."  Because this method of recording court orders raises questions of appealability under Crim.R. 32(C) and *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 19, we sua sponte consider our jurisdiction to entertain this appeal and issue this opinion holding that a judge's sheet is one document that constitutes a final appealable order for purposes of Crim.R. 32(C), and therefore, Stewart's appeal may proceed.  In so doing, we abandon the line-item approach previously followed by this court in determining whether a judge's sheet constitutes a final appealable order if one dated entry contains the sentence and a separate dated entry contains the finding of guilt.  In its place, we adopt a more workable and pragmatic rule that affirms the municipal court judge's sheets are a single legal document for purposes of Crim.R. 32(C) and *Baker*, while continuing to encourage the best practice of recording in a single dated entry all the information required to create a final appealable order.

### *What Is A Judge's Sheet?*

{¶2}     The judge's sheet before us in Stewart's case is a seven-page document consisting partly of preprinted information about the charge against Stewart, partly of preprinted form language, and partly of the trial court judge's handwritten entries reflecting what took place in court across a series of court dates.  Each page contains content on both the front and back sides.  The front side contains, among other information, Stewart's name, the case number, the charge, the judge's name, and a

section of blank lines on which the judge has drafted handwritten orders. These are somewhat difficult to decipher, in part because of the judge's penmanship[1] and in part because they consist of lingo unique to the municipal court: "OK + EMU + JM," "N6 RAC," "180 days HCJC," "CC pay thru prob," "remove from EMD." The back page of each judge's sheet contains a number of forms, which the judge in Stewart's case left blank.[2]

{¶3} The handwritten entries on the front side of the judge's sheet are from different dates: February 23, 2024; March 1, 2024; March 13, 2024; March 29, 2024; April 19, 2024; May 3, 2024; and May 10, 2024. One single page of the seven contains the entries for March 1 and 13. As that page of the judge's sheet indicates, on March 1, 2024, the trial court found Stewart guilty of domestic violence and continued the case for sentencing. And on March 13, 2024, the trial court imposed its sentence—one year probation with an order to stay away from the prosecuting witness and a suspended jail sentence of 180 days—without again finding Stewart guilty. The trial judge's signature appears next to both entries on this single piece of paper.

{¶4} The entire seven-page judge's sheet appears in the record as one document. It is maintained by the clerk as a running journalization of the trial court's orders in the case. Besides a transcript of what took place in court, no other document of the trial court's orders regarding Stewart's guilt or Stewart's sentence exists in the record. In other words, if one wanted to determine what crime Stewart was convicted

---

[1] We mean no disrespect in describing this aspect of the judge's sheets. Perfectly legible penmanship is not a critical skill for being a diligent and thoughtful judge.

[2] The form on the back side of each page of the judge's sheet contains boxes for a municipal court judge to check to provide instructions on how a defendant is to serve a jail sentence. These include limitations on "2-for-1" and "3-for-1" programs where a defendant can shorten a jail term by participating in various early release opportunities. The form also includes blank lines for a judge to record any jail time credit, the amount of any fines and court costs, and whether a stay has been granted. The form may also be used to record driver's license suspensions and any privileges that may be granted during a period of suspension, as well as any conditions a judge places on a defendant during a period of community control.

of and what consequence he faced as a result, the sole source of that information would be the seven-page judge's sheet. A person without training in the specialized nomenclature of municipal court proceedings and without a keen eye for reading the handwriting of others might struggle to make sense of what the trial judge wrote. But there would be no other document in the record to consult on these matters.

{¶5} As best we can discern, judge's sheets are unique to the Hamilton County Municipal Court. No other reported appellate decisions from other appellate districts reference a document called a judge's sheet, nor do the opinions of other appellate districts appear to describe a manner of recording municipal court judges' decisions on a single, running document. Thus, the legal issues created by the use of judge's sheets in the Hamilton County Municipal Court are specific to our jurisdiction.

{¶6} That a municipal court judge might occasionally make errors on a judge's sheet like the one ostensibly contained on Stewart's is both predictable and understandable. Judges at this level of the court system hear many dozens of cases a day, and each case may consist of multiple charges, each requiring its own handwritten judge's sheet. Rather than employing technological solutions to obviate the need for handwritten entries, each judge is left to complete the judge's sheet by hand, often as the hearing in court is taking place live. It is inevitable that judges will on occasion omit a required piece of information from one judge's sheet or another or will erroneously and accidentally record outcomes that differ from what actually took place in court. Judges are, after all, human beings, capable of errors, particularly under conditions that require them to handwrite dozens of orders in real time without the opportunity to proofread or edit them.

4

{¶7} Against this backdrop, we consider the question of whether a judge's sheet is a single document for the purposes of creating a final appealable order or whether each separately-dated entry on a judge's sheet constitutes its own document.

### *Is Each Entry On A Judge's Sheet Its Own Document?*

{¶8} As an appellate court, we are obligated to consider whether we have jurisdiction to hear a case, even if neither party raises the issue. *See State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 4 (permitting appellate courts to raise jurisdictional issues sua sponte); *see also J.B. v. R.B.*, 9th Dist. Medina No. 14CA004-M, 2015-Ohio-3808, ¶ 4, citing *Whitaker-Merrill Co. v. Geupel Constr. Co., Inc.*, 29 Ohio St.2d 184, 185, 280 N.E. 922 (1972) ("This Court is obligated to raise sue sponte questions related to our jurisdiction.").

{¶9} To constitute a final appealable order, a judgment of conviction must contain: (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating journalization by the clerk. Crim.R. 32(C); *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, at ¶ 18. In *Baker*, the Ohio Supreme Court rejected the approach taken by the Twelfth Appellate District that multiple documents containing components of the Crim.R. 32(C) requirements could be aggregated together to create a final appealable order. *Baker* at ¶ 17. Rather, the court indicated that all four components must be contained in a single document. *Id*. at ¶ 19.

{¶10} Shortly after the Ohio Supreme Court announced the rule in *Baker*, this court considered the application of the single document requirement to judge's sheets in *State v. Daniels*, 1st Dist. Hamilton No. C-140242, 2014-Ohio-5160. Daniels had pleaded guilty to theft, a misdemeanor of the first degree, as part of a plea bargain with

5

the state. *Id.* at ¶ 2. In one entry on the judge's sheet, the municipal court recorded the fact of Daniels's conviction and sentence: 180 days in jail with 150 of those days suspended and 30 days credit for pretrial incarceration, one year of probation, and restitution. *Id.* But it scheduled a further hearing to determine the amount of restitution and, in a later entry on the judge's sheet, assessed the restitution amount as $1,950. *Id.* at ¶ 3. It was this order—the one determining the amount of restitution—that Daniels appealed. *Id.* at ¶ 1.

{¶11} Rather than reach the merits of Daniels's appeal, the court dismissed his case for lack of a final appealable order. *Id.* It noted that the municipal court's restitution order lacked the fact of conviction and full sentence required by Crim.R. 32(C), omissions it found problematic despite the fact that a record of Daniels's conviction and the remainder of his sentence existed on the same judge's sheet. *Id.* at ¶ 2, 3, 6. In applying *Baker*, the *Daniels* court treated each entry—the one imposing sentence and the one setting the amount of restitution—as a separate document for the purposes of Crim.R. 32(C). *Id.* at ¶ 6-7. The court contemplated reading the two entries in combination with one another to meet the four requirements of Crim.R. 32(C). *Id.* at ¶ 7. But it rejected this approach based on the Ohio Supreme Court's requirement that each document stand on its own, without explaining why a judge's sheet was not a single document for purposes of the rule. *Id.*

{¶12} Over the past decade, this court has continued to follow the rule set forth in *Daniels*. *See, e.g., State v. Wyche*, 1st Dist. Hamilton No. C-160678, 2017-Ohio-7041. Notably, in *Wyche*, the court extended *Daniels* by explicitly holding that only one *entry* could be used to satisfy the Crim.R. 32(C) requirements. *Id.* at ¶ 3.

6

**{¶13}** However, for the reasons discussed in this opinion, we now conclude that both *Daniels* and *Wyche* were wrongly decided and therefore overrule those cases.

**{¶14}** The Ohio Supreme Court has established a three-part test for determining when it may overrule its own binding precedent. *See Westfield Ins. Co.v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. That test permits abandoning wrongfully-decided case law when: (1) the decision was wrongly decided at the time or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it. *Id.* at ¶ 48. We find that all three criteria are satisfied as to *Daniels* and *Wyche*.

**{¶15}** First, *Daniels* in particular was incorrectly decided. The most critical mistake made by the *Daniels* court was conflating the term "entry" for the term "document." The rule in *Baker* simply requires that the four components of a final appealable order under Crim.R. 32(C)—a conviction, a sentence, a signature, and a stamp—appear on a single *document*. But the *Daniels* court interpreted this rule to mean that each *entry* on a judge's sheet is its own document without explaining why that is the case. *See Daniels*, 1st Dist. Hamilton No. C-140242, 2014-Ohio-5160, at ¶ 6-7. We disagree with the conclusion that entries and documents are fungible, and we reject as against common sense the idea that a single piece of paper comprises multiple documents.

**{¶16}** Moreover, *Baker* did not compel the result the *Daniels* court reached. *Baker* merely prohibits aggregating distinct judicial documents to reach the required Crim.R. 32(C) components. *See Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, at ¶ 17. But *Baker* did not address the question of what constitutes a

document under this rule, nor did it compel the lower courts to treat specific judicial entries as separate documents for the purpose of assessing appealability. *Id.* at ¶ 19. Thus, to the extent it misapplied *Baker*, the *Daniels* court overstepped the precedent it purported to apply.

{¶17} The court in *Daniels* also failed to confront the practical realities regarding judge's sheets. It did not discuss the format or filing of judge's sheets or the manner in which judge's sheets are maintained in the municipal court record. In fact, the term "judge's sheet" does not appear in the *Daniels* opinion at all, and we find this a critical flaw in terms of *Daniels*'s validity.

{¶18} *Wyche* was also wrongfully decided for similar reasons. Like *Daniels*, *Wyche* incorrectly extended *Baker* to entries rather than documents. *Wyche*, 1st Dist. Hamilton No. C-160678, 2017-Ohio-7041, at ¶ 3. Moreover, *Wyche* misquoted the *Baker* opinion by substituting the word "entry" for the word "document" without recognition that the terms are not synonymous. *See id.* ("Therefore multiple entries upon a trial court's journal cannot be read together to satisfy the requirements of Crim.R. 32(C)."); *compare Baker* at ¶ 17 ("Only one document can constitute a final appealable order.").

{¶19} Second, and perhaps more importantly, the rule announced in *Daniels* and *Wyche* is highly unworkable in a number of ways. For one, it disadvantages parties seeking access to legal remedies by postponing the process of an appeal. In the wake of *Daniels*, this court has held that "[t]he defendant is entitled to an order that conforms to Crim.R. 32(C)." *State v. Rucker*, 1st Dist. Hamilton No. C-170488, 2018-Ohio-3575, ¶ 10. That may be so, but we never explained what precisely is to occur after an appeal is dismissed because an entry on a judge's sheet fails the Crim.R. 32(C)

standard. Who will procure a corrected order from the municipal court, when the trial proceeding is essentially over? Which attorney—trial counsel or appellate counsel—represents the defendant in seeking a corrected order? How much time is reasonable for the municipal court judge to correct the entry? What happens if the municipal court refuses to take corrective action?

{¶20} By asking these questions, we expose an additional way in which the *Daniels/Wyche* rule is unworkable: it places the burden of repairing an unintentional mistake by a municipal court judge on the parties rather than the court.

{¶21} Lastly, abandoning the *Daniels/Wyche* rule will not create a hardship for anyone. In fact, we question who the rule was serving. Over the past decade, parties have had to engage in additional litigation aimed at securing a Crim.R. 32(C)-compliant order from the municipal court, and municipal court judges have redone work they already completed. Removing these burdens from a busy court system, from the state, and from the criminally accused and their counsel alleviates, rather than imposes, hardship.

{¶22} But to the extent any person has relied upon a rule requiring all Crim.R. 32(C) components to exist in a single entry on a judge's sheet as a matter of access to information, those individuals will not be harmed by a rule that treats judge's sheets as a single document. The judge's sheets are available in their entirety in every case, and any member of the public can access the information they contain.

{¶23} Thus, because *Daniels* and *Wyche* were wrongly decided, are unworkable, and can be abandoned without imposing a burden, those opinions are hereby overruled. We instead interpret *Baker* to require a single document that contains (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and

(4) the time stamp indicating journalization by the clerk. *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, at ¶ 17. A judge's sheet issued by the Hamilton County Municipal Court is a single document for the purpose of this rule.

**{¶24}** We continue to emphasize that best practice is to include all of the required Crim.R. 32(C) information in one entry. This ensures that the parties have access to one part of the judge's sheet containing all the critical information in a case. This facilitates appellate review. This ensures that no additional work will be required on the part of the municipal court judge. But to the extent that the conviction, sentence, judge's signature, and time stamp of the clerk indicating journalization appear on the judge's sheet, we will treat the judge's sheet as a single document for the purposes of Crim.R. 32(C) holding that a final appealable order exists.

**{¶25}** This is true for Stewart. While the finding of guilt appears in a different place on the judge's sheet than the sentence, we find that distinction immaterial for purposes of Crim.R. 32(C). A final appealable order exists in Stewart's case, and his appeal may proceed.

### *Conclusion*

**{¶26}** For the reasons set forth in this opinion, the rule announced by this court in *State v. Daniels*, 1st Dist. Hamilton No. C-140242, 2014-Ohio-5160, and *State v. Wyche*, 1st Dist. Hamilton No. C-160678, 2017-Ohio-7041, that each entry on a judge's sheet constitutes its own document for the purposes of Crim.R. 32(C) is hereby overruled. The fact that the finding of guilt and sentence might be recorded in separate entries on a municipal court judge's sheet is irrelevant for purposes of appealability, so long as all four components required by Crim.R. 32(C) exist on the judge's sheet for

the case being appealed. The judge's sheet in Stewart's case complies with this standard and therefore constitutes a final appealable order.

Judgment accordingly.

**BOCK, P.J.,** and **BERGERON, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.